UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
: 
UNITED STATES OF AMERICA        :
:
            - v. -                         :            S4 17 Cr. 390 (ALC)
:
DAVID TAYLOR,                      :
:
                Defendant.            :
------------------------------------------------------- X


# GOVERNMENT'S MOTIONS IN LIMINE

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Kiersten A. Fletcher
Justin V. Rodriguez
Nicolas Roos
Assistant United States Attorneys
        - Of Counsel -

# <u>CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS ........................................................................................................... 1

DISCUSSION ...................................................................................................................... 2

I.  Taylor's Diversion of Oxycodone to Other "Patients" Outside of the Charged
    Conspiracy Is Admissible as Direct Evidence or, in the Alternative, Pursuant to Rule
    404(b) .......................................................................................................................... 2

    A.  Applicable Law ................................................................................................... 3

    B.  Discussion ........................................................................................................... 5

II.  Evidence of Taylor's Failure to Report Certain Income to the Internal Revenue
     Service is Admissible ................................................................................................ 8

III.  Statements Made by Taylor and His Co-Conspirators are Admissible ........................... 10

     A.  Applicable Law ................................................................................................. 11

     B.  Discussion ......................................................................................................... 14

IV.  Recordings of Taylor's "Examinations" of Confidential Informants Can Be
     Authenticated without Testimony from the Confidential Informants Themselves .......... 18

V.  Prescription Monitoring Records are Admissible as Business Records ........................... 19

CONCLUSION ................................................................................................................... 22

## PRELIMINARY STATEMENT

The Government respectfully makes the following motions *in limine* with respect to the trial against defendant David Taylor, which is presently scheduled to begin on November 13, 2018.[1]  As discussed below, the Government seeks rulings permitting the Government to: (1) introduce evidence of Taylor's unlawful prescribing of controlled substances to individuals who were not members of the charged conspiracy, as direct evidence or, in the alternative, under Federal Rule of Evidence 404(b); (2) present evidence of Taylor's underreporting of certain income to the Internal Revenue Service; (3) offer certain out-of-court statements made by the defendant's co-conspirators that are either non-hearsay or fall within an established exception to the rule against hearsay; (4) authenticate recordings made by confidential informants without testimony from the informants themselves; and (5) admit data created and maintained by the New York, New Jersey, and Pennsylvania prescription monitoring programs as records falling within the business records exception to the rule against hearsay.

## RELEVANT FACTS

On November 13, 2018, Taylor will begin trial on Indictment S4 17 Cr. 390 (ALC).  The Indictment charges Taylor with conspiring to distribute, and possess with  intent to distribute oxycodone, in violation of Title 21, United States Code, Section 846.

The Government expects to prove at trial that, between January 2012 and June 2017, Taylor prescribed thousands of tablets of oxycodone, without a legitimate medical reason, to Vito Gallicchio, a co-defendant who has pleaded guilty, and other purported "patients" who obtained oxycodone prescriptions from Taylor on behalf of and at the direction of Gallicchio.  Taylor agreed to see these "patients" and write them medically unnecessary oxycodone prescriptions at Gallicchio's

---

[1] As of the time of this filing, all other defendants have pled guilty or indicated their intention to plead guilty this week.

direction. These purported "patients" were given preferential treatment in Taylor's office, were typically seen for visits of five minutes or less, and were not subjected to physical examinations, urine testing, or a requirement that they have an up-to-date MRI. Taylor prescribed large amounts of oxycodone to these members of the conspiracy, increased the monthly allotment of oxycodone without explanation, and maintained high levels of oxycodone for these "patients" for months if not years at a time.

Taylor corrupted his medical practice and entered into this arrangement with Gallicchio in exchange for cash and other personal benefits. Specifically, Taylor typically required patients – particularly those who were members of the conspiracy – to pay for their visits and prescriptions in cash. Gallicchio and other members of the conspiracy also paid Taylor cash and bought him gifts including liquor, cigars, electronics, and other household items.

After seeing Taylor, these "patients" shared some or all of their oxycodone prescriptions with Gallicchio in exchange for cash. Gallicchio filled and directed his co-conspirators to fill these prescriptions, and then sold the oxycodone pills himself and to other drug dealers, who in turn sold the pills to third parties. In total, Taylor wrote prescriptions for over 150,000 oxycodone 30 milligram pills for Gallicchio and his crew – the equivalent of nearly five kilograms of oxycodone.

## DISCUSSION

I.  **Taylor's Diversion of Oxycodone to Other "Patients" Outside of the Charged Conspiracy Is Admissible as Direct Evidence or, in the Alternative, Pursuant to Rule 404(b)**

At trial, the Government expects to offer evidence that Taylor unlawfully prescribed oxycodone not only to Gallicchio and members of Gallicchio's "crew," but also to other "patients" who had no legitimate medical need for the drug. In this regard, the Government expects to offer the testimony of two witnesses ("Witness-1" and "Witness-2"), as well as data and documents related to Taylor's prescription practices with respect to Taylor's practice of prescribing medically

unnecessary oxycodone. Specifically, Witness-1 is expected to testify that, during the same period as the charged conspiracy, Taylor prescribed Witness-1 and Witness-1's brother oxycodone even though neither had a legitimate medical condition. On multiple occasions, Taylor discharged Witness-1 and Witness-1's brother from his medical practice for misusing controlled substances, and then demanded gifts – including a new boiler for Taylor's home – from Witness-1 in exchange for letting Witness-1 and Witness-1's brother back into the practice. The Government expects that Witness-2 will testify that her son struggled with drug addiction and was admitted to treatment programs on multiple occasions. Witness-2 is also expected to testify that Witness-2 found a letter written by Taylor, which stated that Taylor was treating Witness-2's son for addiction, but that Taylor nevertheless continued to prescribe oxycodone to Witness-2's son. The Government also expects to introduce evidence that before and after writing that letter, Taylor prescribed oxycodone to Witness-2's son.

Such evidence is admissible as direct evidence because it is part of a continuous course of similar conduct involving the unlawful distribution of controlled substances and provides the jury with context for Taylor's involvement in the charged conspiracy. Alternatively, this evidence is admissible pursuant to Rule 404(b) because it is evidence of Taylor's intent, knowledge, plan and the absence of mistake.

### A. Applicable Law

It is well established that evidence of otherwise uncharged conduct is admissible, without regard to Rule 404(b), when it constitutes intrinsic or direct proof of the charged crimes. *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). Indeed, the Circuit has frequently observed that such evidence "is not considered other crimes evidence under Rule 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the

charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (internal quotation marks omitted) (quoting *Gonzalez*, 110 F.3d at 942); *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.").

Consistent with the above, evidence of otherwise uncharged conduct is admissible to provide the jury with "background information" on the charged conspiracy. *See United States v. Alcaide*, 112 F.3d 505, 1997 WL 225121, at *2 (2d Cir. 1997). Similarly, evidence of uncharged acts may be offered as direct evidence to demonstrate the chronology or "context of certain events relevant to the charged offense." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994). In such circumstances, the uncharged crime evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

Alternatively, "[o]ther acts" evidence may be admitted under Rule 404(b) where the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect. *See United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity"). Rule 404(b)(2) identifies the proper purposes for the admission of other act evidence, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

The Second Circuit takes an "'inclusionary' approach" to the admission of other-act evidence, under which "'evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity,' as long as it is 'relevant to some disputed issue in the trial' and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (citations omitted).

While any evidence offered pursuant to Rule 404(b) is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *See, e.g., United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *see also United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *cf. Constantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("[B]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

**B.     Discussion**

Witness-1 and Witness-2 are expected to testify about conduct by Taylor that is central to the charged conspiracy, including: the nature of his medical practice; the fact that he prescribed oxycodone that was not medically necessary and did so without a complete physical examination; the number and types of patients in his office; and the money and items of value that he required in exchange for prescriptions. This proof establishes that Taylor engaged in an essentially continuous course of conduct aimed at intentionally and unlawfully distributing controlled substances, which is direct evidence of his intent and knowledge in the charged conspiracy. Because such testimony relates to conduct that "arose out of the same transaction or series of transactions as the charged offense," "is inextricably intertwined with the evidence regarding the charged offense," and "is necessary to complete the story of the crime on trial," it is admissible as direct proof of the

charged conspiracy. *United States v. Robinson*, 702 F.3d 22, 36-37 (2d Cir. 2012) (quoting *Carboni*, 204 F.3d at 44); *see also United States v. Gohari*, 227 F. Supp. 3d 313, 316-18 (S.D.N.Y. 2017) (evidence of physician, who was not a co-conspirator, writing medically unnecessary HIV prescriptions that were filled at the pharmacy of the defendant, who was charged with conspiring to divert oxycodone, was admissible as direct evidence). The fact that Taylor was so willing to prescribe medically unnecessary quantities of oxycodone – often in exchange for "gifts" – provides background to the charged conspiracy and inextricably intertwined with Taylor's willingness to conspire with Gallicchio and others to distribute controlled substances in connection with the charged conspiracy. Accordingly, this proof is plainly admissible as direct evidence.

While the proffered evidence is squarely direct proof of the charge offense, it is also admissible pursuant to Rule 404(b) as evidence of the defendant's knowledge, intent, plan, and absence of mistake. The evidence proves Taylor's knowledge of the illegal nature of his prescription writing and his intent in committing a crime. It shows Taylor's plan for engaging in the charged conspiracy – namely, receiving gifts of liquor and appliances, among other things in exchange for medically unnecessary prescriptions – and that Taylor was not making any kind of mistake when writing illegal prescriptions for Gallicchio and his crew members. These are, without question, "proper purposes" encompassed by the Rule. *See, e.g.*, Fed. R. Evid. 404(b). The proffered evidence is also plainly relevant to a "material issue in dispute," namely Taylor's knowledge and intent in connection with the charged crimes, issues on which the Government will bear the burden of proof at trial and which are certain to be in dispute.

Indeed, where, as here, Taylor does not – and cannot – seriously contest that he wrote oxycodone prescriptions for Gallicchio and the members of his crew, but instead is more likely to dispute his knowledge and intent regarding the legitimacy of these prescriptions, the Government

is given even broader latitude to present the jury with evidence of prior conduct relevant to the issues of knowledge and intent. *See, e.g.*, *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (Rule 404(b) evidence admissible to infer knowledge or intent where defendant claims his conduct had innocent explanation). Here, permitting the Government to offer the other act evidence in question – his writing of illegitimate prescriptions for controlled substances for other "patients" during the time period covered by the Indictment – is plainly probative of Taylor's knowledge, intent, and the absence of mistake with respect to the charged crime.

Accordingly, the Government respectfully believes that the proffered evidence is admissible as both direct evidence and pursuant to Rule 404(b).

Finally, while all evidence is subject to the balancing test set forth in Rule 403, none of the evidence described above is subject to exclusion on that basis. The Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *Roldan Zapata*, 916 F.2d at 804; *Williams*, 205 F.3d at 33-34; *see also Paulino*, 445 F.3d at 223. None of the evidence of Taylor's parallel diversion of oxycodone is more serious or sensational than the diversion of oxycodone charged in this case. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged") (internal quotation marks omitted) (quoting *Roldan-Zapata*, 916 F.2d at 804)); *see also United States v. Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (A "[d]efendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence"). To the contrary, much of the proffered evidence is very similar in seriousness, scope, and magnitude to the charged conduct. Moreover, given the highly probative nature of the evidence to the most important issues at trial –

namely Taylor's knowledge and intent – any prejudice could not possibly "substantially out-weigh[]" the probative value of the evidence.[2]

Moreover, and as more fully detailed above, the actual evidence the Government seeks to offer with respect to those events is modest, is likely to entail just a few brief witnesses and a handful of documents, and will thus be unlikely to distracting, duplicative or confusing to the jury.

In sum, the proffered evidence should either be admitted as direct evidence of the charged conspiracy or, in the alternative, pursuant to Rule 404(b) as evidence of Taylor knowledge, intent and absence of mistake, which are certain to be in dispute at trial.

## II.     Evidence of Taylor's Failure to Report Certain Income to the Internal Revenue Service is Admissible

At trial, the Government expects to introduce evidence that Taylor earned income from purported "patients" that paid for their visits and prescriptions in cash, and that Taylor did not report that income to the Internal Revenue Service ("IRS").  Specifically, the Government's case-in-chief will likely include evidence that Taylor maintained receipts for most patient visits, which indicate the amount paid by the patient and the method of payment.  These records show a substantial number of cash payments from patients to Taylor, including cash payments from Gallicchio and members of his crew.  Additionally, the evidence will show that from those cash payments, Taylor made a substantial amount of income, which he underreported to the IRS.

Evidence that Taylor failed to report to the IRS certain income he derived from the charged conspiracy is admissible as direct evidence of the charged offense and, in the alternative, pursuant to Rule 404(b) as evidence of Taylor's motive, knowledge, intent, and absence of mistake.

---

[2] To minimize any potential prejudice, the Government does not intend to offer evidence of the fact that Witness-2's son overdosed on oxycodone and died, and that oxycodone pills were prescribed by Taylor.  Indeed, while the Government is not seeking to offer any evidence in its case-in-chief about Taylor's patients overdosing, it may seek to do so depending on the defendant's arguments and/or testimony.

First, Taylor's "[f]ailure to report the income from an illegal activity is an act which does arise directly out of the common enterprise because concealment of ill-gotten gains is an integral part of assuring the success of that illegal activity." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (quoting *United States v. Bibby*, 752 F.2d 1116, 1121 (6th Cir. 1985)). Thus, the fact that Taylor did not report the cash income he received from selling illegal prescriptions is direct evidence of his knowledge that the conduct was unlawful. Moreover, the cash income from seeing patients, including the purported "patients" referred to Taylor by Gallicchio, is essential to demonstrating the interdependence and relationship between Taylor and Gallicchio. Taylor's willingness to prescribe medically unnecessary oxycodone prescriptions to Gallicchio's crew of "patients" depended, the evidence will show, in part on the financial compensation that those "patients" provided to Taylor.

Second, the evidence is also offered for a proper purpose under Rule 404(b) – namely, to prove motive and consciousness of guilt and, thus, "knowledge" and "absence of mistake or accident." *See United States v. Deutsch*, 451 F.2d 98, 116 (2d Cir. 1975) (evidence of failure to report transaction was "independently probative of [defendant's] guilt" because it "showed evasive conduct aimed at concealing the transaction and constituted circumstantial evidence of guilty consciousness"); *United States v. Lesniewski*, No. 11 Cr. 1091, 2013 WL 3776235, at *7 (S.D.N.Y. July 12, 2013) (holding that defendants' tax returns, which reflected their failure to report income derived from activities that would render them ineligible for certain benefits, were admissible against them in a fraud case as direct evidence of the crime charged and, alternatively, as evidence of intent, plan, knowledge, and absence of accident or mistake under Rule 404(b)). Here, evidence of Taylor's unreported income is probative of intent. Specifically, the evidence establishes Tay-

lor's motive: to make money by, effectively, selling his prescription pad. It also proves his consciousness of guilt: Taylor did not report the cash income, the evidence suggests, because he knew it was derived from an illegal source. Such evidence is therefore relevant to establishing Taylor's knowledge and absence of mistake with regard to Gallicchio's referred "patients."

Lastly, the evidence described above is not subject to exclusion pursuant to Rule 403, because it is neither "more sensational" nor "more disturbing" than the charged crimes. *Roldan Zapata*, 916 F.2d at 804; *Williams*, 205 F.3d at 33-34. In this instance, the "other act" evidence – proof that Taylor did not pay taxes on all of his income – is patently *less* serious than the charged conduct – narcotics distribution. Moreover, given the highly probative nature of the evidence to the most important issues at trial – namely the defendants' knowledge and intent – any prejudice could not possibly "substantially outweigh[]" the probative value of the evidence. Moreover, and as detailed above, the actual evidence the Government seeks to offer with respect to Taylor's finances is modest, is likely to entail just one to two witnesses and a handful of documents, and will thus be unlikely to distracting, duplicative or confusing to the jury.

In sum, thus, the proffered evidence should either be admitted as direct evidence of the charged conspiracy or, in the alternative, pursuant to Rule 404(b) as evidence of Taylor's knowledge, intent and absence of mistake, which are certain to be in dispute at trial.

## III. Statements Made by Taylor and His Co-Conspirators are Admissible

At trial, the Government intends to introduce recorded conversations between Taylor and members of Gallicchio's crew, during visits by these purported "patients" at Taylor's medical office. Additionally, the Government expects that certain cooperating witnesses will testify about: (1) conversations they had directly with Taylor; (2) conversations they had with other co-conspirators about statements made by Taylor; and (3) statements made by co-conspirators in furtherance of the conspiracy. All of these statements are admissible, non-hearsay evidence because they were

made by co-conspirators in furtherance of the charged criminal conspiracy, and were statements against penal interest.

### A. Applicable Law

#### 1. Rule 801(d)(2)(A): Statements of Opposing Party

A criminal defendant's out-of-court statements are admissible against that defendant pursuant to Rule 801(d)(2)(A), "which exempts from the hearsay rule any 'statement . . . offered against a party' as an admission." *United States v. Alvarez-Porras*, 643 F.2d 54 (2d Cir. 1981) (quoting *United States v. Nixon*, 418 U.S. 683, 701 (1974) and *United States v. Matlock*, 415 U.S. 164, 172 (1974)). Rule 801(d)(2)(A) reaches a defendant's statement even when the statement was not made directly to the testifying witness. *See United States v. Kramrish*, 604 F. App'x 26, 29 (2d Cir. 2015) (challenged testimony regarding what a co-conspirator told a witness about what the defendant said was not hearsay because Rule 801(d)(2)(A) and (E) applied).

#### 2. Rule 804(b)(3): Statements Against Interest

If a declarant is "unavailable," the Federal Rules of Evidence provide an exception to the hearsay rule for statements "against interest." A statement against interest is one that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3). "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994).

To satisfy Rule 804(b)(3), the proponent of the statement must show by only a preponderance of the evidence: "'(1) that the declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Wexler*, 522 F.3d 194, 202 (2d Cir. 2008) (quoting *United States v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir. 1983)) (alteration in original). In general, a statement is against penal interest if "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007). "The proffered statement '[need] not have been sufficient, standing alone, to convict [the declarant] of any crime,' so long as it would have been 'probative' in a criminal case against him." *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (quoting *United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011)).

Although "non-self-inculpatory statements . . . made within a broader narrative that is generally self-inculpatory" are not admissible as statements against penal interest, *Williamson*, 512 U.S. at 600-01, a statement describing inculpatory acts are admissible in full as statements against the declarant's penal interest, especially where the context of the statement demonstrates that the declarant was not attempting to "minimize his own culpability, shift blame onto [the defendant], or curry favor with authorities." *Williams*, 506 F.3d at 155; *accord Wexler*, 522 F.3d at 203 (affirming admissibility of statements that implicated both declarant and defendant); *Saget*, 377 F.3d at 231 (affirming admissibility of taped conversations implicating both the declarant and the defendant in joint criminal activity).

Finally, because statements to associates about crimes in which the declarant participates are not testimonial, the admission of such statements does not violate the Confrontation Clause. *Williams*, 506 F.3d at 157.

### 3. Rule 801(d)(2)(E): Coconspirator Statements

A statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to demonstrate that a statement is admissible under Rule 801(d)(2)(E), the Government must demonstrate "by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) (internal quotation marks omitted). The proffered allegedly hearsay statement may itself be considered in making the Rule 801(d)(2)(E) determination. *See Bourjaily v. United States*, 483 U.S. 171, 181 (1987) ("[A] court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted.").

A statement is made during the course of and in furtherance of a conspiracy where it is intended to: (i) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (ii) "provide reassurance" to members of the conspiracy, *id.* at 158; (iii) "foster trust and cohesiveness" between the members of the group, *id.*; and (iv) "facilitate and protect" their conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); *see also United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991) (statements that "provide reassurance, serve to maintain trust and cohesiveness among [co-conspirators], or inform each other of the current status of the conspiracy" are in furtherance); *United*

*States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987) (statements "that apprise a co-conspirator of the progress of the conspiracy" are considered to be in furtherance).  The fact that one party to the conversation is not a member of the conspiracy, or even a government agent or confidential informant, does not preclude admission of statements by the declarant, as long as the declarant was a member of the conspiracy.  *See United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994) (communications to someone not a member of the conspiracy can be in furtherance of conspiracy's goals); *Farhane*, 634 F.3d at 160 (admitting recorded conversations between co-defendant and a confidential informant); *United States v. Hamilton*, 597 F. Supp. 2d 407, 410 (S.D.N.Y. 2009) (admitting recordings between defendant and confidential informant).

Finally, because statements to associates about crimes in which the declarant participated are not testimonial, the admission of such statements does not violate the Confrontation Clause or run afoul of *Crawford v. Washington*, 541 U.S. 36 (2004).  *See United States v. Logan*, 419 F.3d 172, 178 (2d Cir. 2004) (noting that "[i]n general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial" and are therefore not barred by Crawford); *Williams*, 506 F.3d at 157.

### B.  Discussion

The proffered evidence is admissible pursuant to Federal Rules of Evidence 801(d)(2)(A), 801(d)(2)(E) and 804(b)(3).

First, at trial, the Government expects to introduce recordings of conversations between Taylor and confidential informants during patient visits.  Taylor's own statements during those consensually recorded visits are plainly admissible against Taylor as statements of an opposing party pursuant to Rule 801(d)(2)(A).  *See United States v. Reed*, 576 F. App'x 60, 61 (2d Cir. 2014) (summary order) (district court did not err in admitting recordings of the defendant because the

"conversations were admissible as a statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A)"); *United States v. Guang Ju Lin*, 505 F. App'x 10, 13 (2d Cir. 2012) (summary order) (same).  The statements of his purported "patients" on the recordings, who were then acting as confidential informants, are not hearsay statements because they are not being offered for their truth, but instead provide context for Taylor's statements and actions.  *See United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir.1995) (holding that recorded statements of a confidential informant offered to render intelligible defendant's recorded statements were not hearsay); *United States v. Perez,* No. 05 Cr. 441 (PKL), 2005 WL 2709160, at *2 (S.D.N.Y. Oct. 20, 2005) (holding that recorded statements of an informant were not hearsay because offered as context for co-conspirator's statements).

Second, testimony from cooperating witnesses about statements made by Taylor are admissible as statements of the defendant, pursuant to Rule 801(d)(2)(A), and co-conspirator statements, pursuant to Rule 801(d)(2)(E).  The Government expects that certain cooperating witnesses will testify about their conversations with Taylor when they went to his office.  Like the recorded statements described above, statements made by Taylor, as described by cooperating witnesses, are admissible against Taylor pursuant to Rule 801(d)(2)(A).  The cooperating witnesses' own statements are likewise admissible because they are being offered for a non-hearsay purpose – to give context to Taylor's statements.  But even if the statements were offered for their truth, they still meet the requirements of Rule 801(d)(2)(E) and are admissible against Taylor as statements made during and in furtherance of the conspiracy to obtain oxycodone for unlawful distribution. With respect to the first requirement, the Government will prove that Taylor and Gallicchio were members of the conspiracy through the testimony of multiple cooperating witnesses who will establish that Taylor and Gallicchio had an understanding or agreement, and that consistent with that

understanding, Gallicchio sent members of his crew to Taylor as "patients." The Government expects that these cooperating witnesses will testify that they were members of this conspiracy and saw Taylor as "patients" at the urging and direction of Gallicchio. As to the second requirement, these cooperating witnesses statements were made in furtherance of the conspiracy because each of the statements were intended to, and did, "prompt" Taylor "to respond in a way that promotes or facilitates the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958, "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotation marks omitted), and "facilitate and protect" the conspiratorial activities, *Diaz*, 176 F.3d at 87.

Lastly, testimony from cooperating witnesses about statements made by Gallicchio about things that Taylor did or said are admissible as statements against interest, pursuant to Rule 804(b)(3), and coconspirator statements conveying the defendant's statements, pursuant to Rule 801(d)(2)(A) and (E). The Government also expects that certain cooperating witnesses will testify about statements made by Gallicchio regarding (1) the conspiracy generally, and (2) statements made or actions taken by Taylor in particular. For instance, witnesses will likely testify about directions Gallicchio gave them for obtaining oxycodone, as well as statements made by Gallicchio that Taylor had requested money or other personal benefits. Gallicchio's statements to cooperating witnesses were plainly against his own penal interest and are therefore admissible for that reason.[3] Gallicchio told witnesses to go to Taylor, how to obtain preferential treatment, where to fill pre-

---

[3] Many of these statements were also instructions which are, by definition, not hearsay, because they are offered not for their truth but to "aid the jury in understanding the background events leading to the crime in question . . . ." *United States v. Lubrano*, 529 F.2d 633, 637 (2d Cir. 1975) (testimony of agent concerning actual instructions given to government informant were not hearsay); *United States v. Figueroa*, 750 F.2d 232, 239-40 (2d Cir. 1984) (testimony "limited to statements of instructions" is not hearsay).

scriptions, and that Gallicchio would buy pills from the purported "patients." All of these statements are, at a minimum, "probative" of Gallicchio's guilt, *Gupta*, 747 F.3d at 127, if not outright inculpatory, and therefore against the declarant's penal interest. *See United States v. Saget*, 377 F.3d 223, 231 (2d Cir.), supplemented, 108 F. App'x 667 (2d Cir. 2004) (statements by a non-defendant declarant regarding illegal acts taken by the defendant, alone, fit within Rule 804(b)(3): the statements were "self-inculpatory in context" because they "reflected [the declarant's] attempt to give the [witness] examples of how [the declarant] and [the defendant] operated and why their scheme worked"); *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir. 1995) (upholding the admission of statements that "dually incriminate[ed] the defendant and the declarant, finding them to be reliable because (i) they equally inculpated the declarant along with the defendant; (ii) they were made by the declarant to a trusted friend; and (iii) there was no basis to conclude that the declarant would falsely implicate the defendant to curry favor with the listener).

The foregoing proffered statements also constitute coconspirator statements. Gallicchio, Taylor, and the cooperating witnesses were members of the conspiracy, and Gallicchio's statements to the cooperating witnesses were in the course of and in furtherance of the conspiracy in that they served to, among other things, "engender trust, to increase [the witness's] familiarity with the conspiracy's modus operandi, and to outline future conspiratorial actions and the anticipated profits." *United States v. Lozano-Reyes*, 101 F.3d 686 at *2 (2d Cir. 1996); *see also United States v. Salerno*, 868 F.2d 524, 535-37 (2d Cir. 1987) (admitting co-conspirator statements about past events that helped to coordinate future criminal activities and brief co-conspirators about the co-operation of a high-ranking member). That is exactly what Gallicchio was doing in his statements to the cooperating witnesses when he relayed statements and demands by Taylor and conveyed plans for obtaining and distributing additional oxycodone. The mere fact that Taylor was not

present for some of these conversations does not render them inadmissible. *See United States v. Farhane*, 634 F.3d 127, 161-62 (2d Cir. 2011). Accordingly, the statements are admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E).[4]

## IV. Recordings of Taylor's "Examinations" of Confidential Informants Can Be Authenticated without Testimony from the Confidential Informants Themselves

The Government intends to introduce at trial audio and video recordings of Taylor's "examinations" of confidential informants acting at the direction of law enforcement. The recordings, which devices on the informants' persons captured, show Taylor conducting little to no medical examination during very brief interactions with the informants and then prescribing the informants oxycodone for which they had no legitimate medical need. Law enforcement officers personally affixed the recording devices to the informants shortly before each informant visited Taylor, waited nearby until the "examinations" were complete, and then retrieved the recording devices from the informants after they exited Taylor's offices. The law is clear in this Circuit that officer testimony to this effect is sufficient to authenticate these recordings without testimony from the confidential informants themselves.

Authentication under Rule 901 "does not erect a particularly high hurdle." *SCS Commn's, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 344 (2d Cir. 2004). To satisfy the requirement under Rule 901(a) that all evidence be authenticated or identified prior to admission, the proponent of the evidence must offer "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b), in turn, sets forth a non-exhaustive list of appropriate methods of authentication, including "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

---

[4] As noted, certain of the witnesses will testify regarding directions that Gallicchio gave them. Because directions do not constitute hearsay, they are independently admissible on that basis as well.

It is well-settled law in this Circuit that "[t]here simply is no requirement that [recordings] be put in evidence through the person wearing the recorder or, for that matter, through a contemporaneous witness to the recorded conversations." *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977); *see also United States v. Barone*, 913 F.2d 46, 49 (2d Cir.1990) ("[T]he government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording . . . ."); *United States v. Dinero Exp., Inc.*, No. 99 Cr. 75 (SWK), 2000 WL 1134484, at * 2 (S.D.N.Y. Aug. 9, 2000) ("There is no question that an audio-tape of a conversation can be authenticated without the testimony of any of the participants to or witnesses of the conversation."). While the Government must "'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recordings," *Fuentes*, 563 F.2d at 532, that burden is satisfied when, among other ways, an agent testifies that (i) the agent "personally affixed a recording device to [the] cooperating witness . . . shortly before [the recorded] meeting," (ii) that, after the agent affixed the recorder, the agent saw the confidential informant go into the meeting, and (iii) after the meeting, the agent "removed the recorder from [confidential informant's] person, and preserved the recording." *United States v. Mouallem*, 566 Fed. App'x 82, 83-84 (2d Cir. May 19, 2014). In these circumstances, the agent's "testimony – standing alone – is sufficient to authenticate the recording" without "testimony from [the confidential informant] himself." *Id.* at 84.

As described above, officers personally affixed the recording devices to the informants shortly before each informant visited Taylor, waited nearby until the "examinations" were complete, and then retrieved the recording devices from the informants after they exited Taylor's offices. Testimony from the officers to this effect is all that is needed to authenticate the recordings.

## V. Prescription Monitoring Records are Admissible as Business Records

At trial, the Government intends to introduce records obtained from state agencies in New

York, New Jersey, and Pennsylvania that administer prescription drug monitoring programs ("PMP").  PMP records are "classic business records, regularly admitted by courts in this Circuit pursuant to Fed. R. Evid. 803(6)."  *United States v. Mirilishvili*, No. 14 Cr. 810 (CM), 2016 WL 751690, at *5 (S.D.N.Y. Feb. 19, 2016).

By way of background, and as custodians of record would testify at trial, state agencies in New York, New Jersey, and Pennsylvania are required by law to maintain electronic PMPs to track the prescribing and dispensing of controlled substances.  *See* N.Y. Pub. Health Law § 3343-a; N.J. Stat. Ann. § 45:1-45; 35 Pa. Stat. Ann. § 872.6.[5]  In administering these programs, these agencies collect, as a core part of their regularly conducted business activity, certain information on every prescription for a controlled substance filled in the state.  By law, each time a pharmacy fills a prescription for a controlled substance, it reports to the state PMP: (1) the name and address of the patient; (2) the name and license number of the prescribing doctor; (3) the medication and dosage dispensed; and (4) the method of payment.  The PMPs collect this information for every prescription filled in the state, and they are capable of generating reports indicating only that information relevant to a particular doctor or patient or pharmacy.

At trial, the Government intends to offer PMP records documenting each prescription for a controlled substance written by Taylor and filled at a pharmacy. Those records were made at or near the time the prescription was filled from "information transmitted by[] a person with knowledge" – that is, the dispensing pharmacist or pharmacy – and were both made as "the regular business practice of" the PMPs and "kept in the course of [PMP's] regularly conducted business activity." Fed. R. Evid. 803(6). They thus meet every criteria of "record of regularly conducted

---

[5] New York's PMP program is administered by the Bureau of Narcotics Enforcement ("BNE"), and as a result, New York's PMP records are occasionally referred to as BNE records.

activity." *See also United States v. Komasa*, 767 F.3d 151 (2d Cir. 2014) (proper foundation for business record established where "custodian or other qualified witness . . . testif[ies] that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].") (internal quotations omitted, second alteration omitted) (collecting authorities). Nor do the PMP records raise Confrontation Clause concerns because they are entirely non-testimonial in nature. *Cf. United States v. Feliz*, 467 F.3d 227, 234 (2d Cir. 2006) (noting that "[t]he essence of the business record exception contemplated in *Crawford* is that such records or statements are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are by their nature not prepared for litigation") (internal quotations omitted); *id.* at 236 ("[W]here a statement is properly determined to be a business record as defined by Fed. R. Evid. 803(6), it is not testimonial within the meaning of *Crawford*, even where the declarant is aware that it may be available for later use at trial.").

Indeed, for just these reasons, PMP records (or their equivalents from other states) have routinely been admitted. *See, e.g., Mirilishvili*, 2016 WL 751690, at *5; *United States v. Lowe*, No. 14 Cr. 55 (LGS) (admitting New York PMP records as business records); *United States v. Wiseberg*, No. 13 Cr. 794 (AT) (admitting New Jersey PMP data as business records); *see also United States v. Cooper*, 868 F.2d 1505, 1514 (6th Cir 1989) (no error in admitting pharmacy prescription log book as business record in prescription drug diversion trial).

## **CONCLUSION**

For all of the foregoing reasons, the Government respectfully submits that the Court grant

the Government's motion in its entirety.

Dated: New York, New York
October 29, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:  /s/_____
Nicolas Roos
Kiersten A. Fletcher
Justin V. Rodriguez
Assistant United States Attorneys
(212) 637-2421 / -2238 / -2591